UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILFREDO S. SEPULVEDA,

        Petitioner,

v.                              Case No:   2:15-cv-587-FtM-38MRM

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

        Respondents.[1]
_____/

### OPINION AND ORDER[2]

This matter comes before the Court on a petition for habeas corpus relief filed

pursuant to 28 U.S.C. § 2254 by Wilfredo S. Sepulveda ("Petitioner"), a prisoner of the

Florida Department of Corrections (Doc. 1, filed July 16, 2015).   Petitioner, proceeding

*pro se*, attacks the convictions and sentences entered against him by the Twentieth

Judicial Circuit Court in Hendry County, Florida for manslaughter and leaving the scene

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (citations omitted).   In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

[2] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

of an accident involving death. *Id.*   Respondent filed a response to the petition (Doc. 17). Despite having the opportunity to do so (Doc. 18), Petitioner did not file a reply.   The matter is now ripe for review.

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied.   Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted.   *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background

On July 2, 2009, the State charged Petitioner with leaving the scene of a crash resulting in death, in violation of Florida Statute § 316.027(1)(B) (count one) and second degree murder, in violation of Florida Statute § 782.04(2) (count two) (A1 at 87).[3]   On July 17, 2012, the State reduced the second degree murder charge to manslaughter in exchange for Petitioner's plea to both counts (A1 at 90-98; A3 at 1-18).   Petitioner was sentenced to two concurrent terms of fifteen years in prison (A3 at 14-16).   He did not appeal his convictions or sentences.

On February 25, 2013, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion"), raising six separate grounds for relief (A1). The post-conviction court summarily denied Petitioner's claim that the State would have offered a better plea deal had it heard

---

[3] References to appendices are to those filed by Respondent on April 1, 2016 (Doc. 19).   The transcript of the evidentiary hearing held on October 7, 2013 is located at appendix two (A2) and cited as (EH at ___).

testimony on Florida's "Stand Your Ground" law and ordered an evidentiary hearing on the remaining claims (A1 at 181-83).   An evidentiary hearing was held on October 7, 2013 (A2).   After the hearing, the post-conviction court denied the remaining claims (A1 at 185-87).   Petitioner appealed the post-conviction court's rejection of Claims Three, Five, and Six (B1).   Florida's Second District Court of Appeal affirmed *per curiam* (B3).

Petitioner filed the instant case on July 16, 2015 (Doc. 1).

## II.   Governing Legal Principles

### A.   Standard of Review

Pursuant to 28 U.S.C. §§ 2254(d)(1) and (2), federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is both mandatory and difficult to meet.   *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.   *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).   Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time

the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state

court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).   Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) (same).

## B.    Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.   *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness

under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]"   *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   In order to satisfy *Strickland*'s prejudice prong in the context of a guilty plea, Petitioner must show that there is a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## C.    Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.   Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)).

The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).   Actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   Analysis

In his Rule 3.850 motion, Petitioner described the circumstances surrounding his arrest as "Factual Background (necessary to understanding the claim[s])," and asserts that he informed defense counsel ("Counsel") of the following facts:

> On the day of the incident, May 30, 2009, he had come home from fishing and went to take a shower. When he came out, his step-son, Giovanni Fuentes, had come home crying and told his mother (Defendant's wife), Omaeda Cavazos, that he had just been "jumped by those boys" (which everyone understood to refer to members of the Fairgrounds gang). Omaeda Cavazos became upset (this being at least the third time that Fuentes had been attacked), told Fuentes to get in her car and they were going to the police station to put a stop to this (Fuentes having previously been reluctant, out of fear of retaliation, from identifying his attackers in police reports which had been filed regarding prior attacks by members of the Fairgrounds gang.) Omaeda Cavazos left with Fuentes.
>
> Defendant got dressed and jumped in his truck to follow. As he headed in the direction his wife had gone, he saw something going on up the road. His wife's vehicle was stopped, apparently blocked by another vehicle and there was a "commotion" involving five to seven people who were running around in the area to the right and beyond the stopped vehicles.

> Defendant sped up to get to his location to see what was happening and went to the left of the stopped vehicles, the only route to get around the vehicles, to get to where the commotion was. He did not see the victim, Raul Beraza, get hit. At the time he thought he had hit a garbage can or a pole. Because he was going faster than he thought, he stopped approximately 150 feet beyond the stopped vehicles. As he did he looked back to see people still running and then his wife's vehicle pull around the other vehicle and speed to his location a little further up the road where his wife yelled at him that she thought he might have hit "one of those boys and to get the fuck out of here before they kill you." Defendant left, took his truck to the Indian Reservation and then left town until he could arrange his surrender to police.

(A1at 7-8).   Petitioner asserts that Counsel did not further question him after being informed of these facts; rather Counsel told him that he would be "looking into" his case. *Id.*

Petitioner now asserts that Counsel was ineffective for: (1) failing to adequately consult with Petitioner; (2) failing to investigate the defenses of self-defense, defense of another, and accident; (3) failing to inform Petitioner of the existence and availability of the defenses of self-defense, defense of another, and accident; (4) failing to consider, evaluate the viability of, and seek immunity under Florida's "Stand your Ground" law; and (5) allowing Petitioner to enter a plea without knowledge of the merit and viability of the defenses of self-defense or accident.   Petitioner also asserts that his plea was unknowing, unintelligent, and involuntary because the state withheld evidence favorable to the defense (Doc. 1 at 5-45).

### A.   Claims One, Two, and Four

In Claim One, Petitioner asserts that Counsel was ineffective for failing to adequately consult with him, and as a result, Counsel was unaware of many important facts and could not provide effective representation (Doc. 1 at 5).   Petitioner asserts that, in addition to telling Counsel about the facts leading to his arrest, he told him that everything that happened was related to gang activity.   He asserts that he told Counsel that the victim and his friends, Mario Trejo and Juan Lopez, were the same people who had "jumped" his son earlier that day. *Id.*

at 7.   Although Petitioner met with Counsel at least fifteen times before his plea, Counsel just told Petitioner that he was "still looking into things" whenever he was asked about the case. *Id.*   Counsel did not question Petitioner further regarding the basic facts initially relayed to him.  *Id.*   Petitioner asserts that he entered a plea solely because "he believed he had no viable alternatives other than that counsel might be able to 'try to get reckless' driving or witnesses (except possibly himself) who could testify to a defense at trial." *Id.* a 13.   He asserts that, had he known of available defenses, he would not have entered a plea and would have insisted on a trial. *Id.*   In Claim Two, Petitioner asserts that Counsel failed to investigate the defenses of self-defense, defense of another, or accident (Doc. 1 at 14).   In Claim Four, Petitioner asserts that Counsel failed to pursue Petitioner's immunity from prosecution under Florida's "Stand your Ground" law (Doc. 1 at 35).[4]

Petitioner raised these claims in his Rule 3.850 motion, and after holding an evidentiary hearing, the post-conviction court rejected each in a single narrative order, *see* discussion *infra* Claims Three and Five, presumably because most of the allegations made in Petitioner's claims—particularly Two, Three, and Five—were virtually identical (A1 at 186-87).   The order was affirmed per curiam by Florida's Second District Court of Appeal (B3).

Respondent now urges that Claims One, Two, and Four are unexhausted because Petitioner did not specifically raise them on appeal of the post-conviction court's denial of his Rule 3.850 motion (Doc. 17 at 27).   Respondent is correct.   In his brief on appeal, Petitioner argued only that the post-conviction court failed to expressly rule on Claim Six and erred when it denied Claims Three and Five without "examin[ing] the totality of the circumstances in order to determine whether or not [Petitioner] would have entered a plea

---

[4] Florida Statute § 776.013(3) ("A person who is attacked in his or her dwelling, residence, or vehicle has no duty to retreat and has the right to stand his or her ground and use or threaten to use force, including deadly force [in certain situations]").

had [Counsel] not been ineffective." (B1 at 14, 16).   Pursuant to Rule 9.141(b)(3) of the Florida Rules of Appellate Procedure, failure to fully brief and argue points on appeal after receiving an evidentiary hearing on a Rule 3.850 motion, constitutes a waiver of those claims. *See*, *e.g.*, *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (Florida prisoner must appeal denial of Rule 3.850 relief to exhaust remedies);[5] *Cortes v. Gladish*, 216 F. App'x 897, 899-900 (11th Cir. 2007) (recognizing that when a petitioner receives an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief waives those issues); *Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) (Failure to fully brief and argue points on appeal constitutes a waiver of these claims.).

The "one complete round" exhaustion requirement set forth in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) applies to post-conviction review; a prisoner must appeal the denial of post-conviction relief in order to properly exhaust state remedies. *Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) ("*Boerckel* applies to the state collateral review process as well as the direct appeal process"); *LeCroy v. Secretary, Florida Dept. of Corrections*, 421 F.3d 1237, 1261 (11th Cir. 2005) (as Florida prisoner failed to properly exhaust claim on direct appeal or Rule 3.850 appeal, it was procedurally barred, citing *Coleman*).   "A petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." *Lucas v. Sec'y Dep't of Corr.*, 682 F.3d 1342, 1353 (11th Cir. 2012). Petitioner has shown neither.

---

[5] The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Petitioner was represented by appellate counsel on appeal of his Rule 3.850 motion (B1).   To the extent Petitioner now argues that his Rule 3.850 appellate counsel's ineffectiveness excuses his failure to exhaust these claims, such argument in foreclosed by the Supreme Court decisions in *Coleman v. Thompson* and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).   In *Coleman*, the petitioner had defaulted his claim because he failed to timely appeal the denial of his state habeas petition. *Coleman*, 501 U.S. at 727.   The petitioner argued that the cause for his default was his appellate counsel's failure to timely file the appeal. *Id.* at 752. The *Coleman* court concluded that such a procedural default may be excused only if the "cause" under the cause and prejudice test was something *external* to the petitioner that could not fairly be attributed to him. *Id.* at 753 ("As between the State and the petitioner, it is the petitioner who must bear the burden of a failure to follow state procedural rules. In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation[.]").   The Court recognized that attorney error could be seen as an external factor only if it violated the Sixth Amendment right to counsel. *Id.* at 754. However, because a defendant has no right to counsel in state collateral proceedings after exhaustion of direct appellate review, "it would defy logic for us to hold that [petitioner] had a right to counsel to appeal a state collateral determination of his claims of trial error." *Id.* at 756-57.   Accordingly, appellate counsel's failure to timely file the appeal did not excuse the petitioner's procedural default.

In *Martinez*, the Supreme Court relaxed the *Coleman* cause-and-prejudice standard to excuse procedural default in a narrow category of cases.   Specifically, the Supreme Court determined that the procedural default of "an ineffective-assistance claim" by post-conviction counsel in an initial-review state-court collateral proceeding should be

excused under a more lenient standard than cause and prejudice under *Coleman*. *Martinez*, 132 S. Ct. at 1318.   However, the Court in *Martinez* was careful to restrict its holding to ineffective assistance in the <u>initial-review</u> collateral proceeding in state court. The Court wrote:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. ***The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings***, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id.* at 1320 (emphasis added)(citations omitted).   In the instant case, it is only the <u>appeal</u> of an initial review collateral proceeding that was defaulted.   Therefore, the *Martinez* exception does not apply.   Broadening the rule to excuse Petitioner's failure to exhaust in this case would ignore the Supreme Court's emphatic statement that the *Martinez* rule creates only a narrow exception to *Coleman's* general rule. *See Martinez*, 132 S. Ct. at 1315 (referring to a "narrow exception"); *Id.* at 1320 (referring to the "limited circumstances" in which its ruling applied and discussing the "limited nature" of the rule).

Because Petitioner had no right to counsel on appeal of his Rule 3.850 motion, any attorney error that led to the default of Petitioner's claims in state court cannot constitute cause to excuse his default on federal habeas review.   Petitioner has made none of the requisite showings to excuse the default of Claims One, Two, and Four. *Coleman*, 501 U.S. at 734–35.   Accordingly, Claims One, Two, and Four are dismissed as unexhausted and procedurally barred.

## B.    Claims Three and Five

In both claims, Petitioner asserts that Counsel was ineffective for failing to inform him of the defenses of self-defense, defense of another, or accident (Doc. 1 at 31, 39). He alleges that Counsel only informed him of a possible reckless driving defense and told him that he planned to present no defense witnesses other than Petitioner. *Id.* at 32. Petitioner also argues that he was not informed of the viability of a Stand your Ground defense. *Id.*   Petitioner asserts that he therefore entered a plea without knowledge of the merits of these defenses. *Id.* at 39.   These claims were considered and denied by the post-conviction court:

> This matter came to hearing with the Defendant, Wilfredo Sepulveda, called to testify by current defense counsel, APD Regine Emile. Defendant testified that he met with his former defense counsel, Mr. Fred Haddad, on approximately fifteen occasions, with his last meeting with attorney Haddad being approximately five to six months prior to the plea date. It is Defendant's contention that Mr. Haddad never discussed possible defenses with him including a "stand your ground" defense or one of "reckless driving[.]" Defendant also contends that Mr. Haddad failed to investigate in that he failed to interview witnesses suggested by the Defendant, never investigated potential gang ties or connections between the witnesses and the deceased, and had stand-in counsel conduct the depositions of state witnesses rather than himself. Defendant contends that he would not have taken the plea offer but-for his attorney's alleged ineffective assistance of Mr. Haddad and would have gone to trial.
>
> Following that testimony, former defense counsel, Mr. Fred Haddad took the stand. Mr. Haddad testified that he had thirty-nine years' experience as a criminal trial attorney and had participated in more than six hundred trials. Mr. Haddad testified that he had met with the Defendant between fifteen and sixteen times ("more than most") and that he had extensive discussions with the Defendant about the possible defenses. As to the proposed defenses offered by the Defendant, it was his learned opinion that a stand your ground defense was not applicable given the facts and/or circumstances in this case. In particular, Mr. Haddad pointed

out that the incident involved the Defendant['] operation of a motor vehicle at a time when the victim was struck and killed. That, in and of itself, may have led to either a plea to or jury finding of a reduced charge of reckless driving. However, rather than stopping at the scene, the Defendant left[,] that the Defendant's decision to flee from the scene resulted in the second charge of Leaving the Scene of a Crash-Death, pursuant to F.S. 316.027(1)(b). The Defendant's act in leaving the scene after a death occurred resulted in him being charged with a crime for which a stand your ground defense did not apply.

As for the other allegations of ineffective assistance, Mr. Haddad testified that he purposefully stayed away from the gang affiliation issue due to the fact that other participants in the incident who would have been witnesses for the defense at trial had been armed with weapons and were actively in the process of committing assaults upon other persons when the victim was struck by the vehicle being operated by the Defendant. It was Mr. Haddad's opinion that this information would have been detrimental to the Defendant's case as it may have tended to show that the Defendant intentionally struck the victim as opposed to accidentally striking him. As to the depositions issue, Mr. Haddad told the court that he was working with an associate attorney, Attorney Mark DeCowden, at the time of representation and that Mr. DeCowden had conducted numerous depositions before. Mr. Haddad testified that he had read all of the reports associated with the case and had then fully briefed Mr. DeCowden prior to the depositions.

Lastly, Attorney Haddad testified that he was ready, willing and able to proceed to trial at the time the Defendant entered his plea. As a matter of fact, he said, the Defendant had been insisting on a trial right up to the time of the plea. He said the decision to plea in this case was Defendant['] decision, that he had spoken with the Defendant in great detail about the case, and that the Defendant felt it was in his best interest to accept the plea of fifteen years, concurrent, on the charges of Manslaughter, a second degree felony, and Leaving the Scene of a Crash-Death, a first degree felony given that he could have received a sentence up to fifteen years and thirty years on those two crimes respectively.

Having had the benefit of the written arguments of both parties, the testimony at the hearing, and of observing the demeanor of the witnesses, this Court finds trial former

> defense counsel, Mr. Haddad, very credible. Additionally, this Court expressly finds that Defendant was not credible as his testimony at the hearing was inconsistent. Therefore, the Court finds that the Defendant has failed to demonstrate that counsel was ineffective within the meaning of <u>Strickland</u>.

(A1 at 186-87). The order was affirmed *per curiam* by Florida's Second District Court of Appeal (B3). Petitioner does not explain how the post-conviction court's denial was contrary to, or an unreasonable application of, *Strickland*, or how it was based upon an unreasonable determination of the facts. A review of the record supports the state courts' conclusion that Counsel's performance was not deficient.

At the evidentiary hearing on these claims, Petitioner stated that he believed Counsel should have investigated the victim's gang affiliation in order to develop additional defenses to the charges against him (EH at 15). He testified that the only possible defense discussed with Counsel was reckless driving. *Id.* at 5. He said that he informed Counsel of the gang-related nature of the incident that lead to the victim's death. *Id.* at 15. He was unhappy that Counsel had not followed up on the gang angle as thoroughly as he should have. *Id.* at 21. He admitted, however, that Counsel had not forced him to enter a plea. *Id.* at 22.

Counsel testified that he was well aware of the gang-related nature of the altercation that lead to the victim's death, but thought that bringing this out at trial would be damaging to Petitioner's "nice-guy" image (EH at 44-45, 47, 49, 50, 61-62). The police reports indicated that Petitioner's stepson, Giovanni Fuentes, was in possession of a gun before Petitioner struck the victim with his vehicle and that Fuentes kicked the victim in the head as he lay dying on the ground afterwards. *Id.* at 40. 52. Another member of Petitioner's family was carrying a baseball bat. *Id.* When asked why he told Petitioner he did not wish to call his family members as witnesses at trial, Counsel explained:

> Well, they were quasi-gang members. I mean, Fuentes was out there with a bat and a gun, and he's not so scared. He's taking on three supposed gang members standing out in the

street.   The other kids, who are supposedly in fear for their
life, kicked the guy while he's down and almost dead.
They're kicking him in the head and breaking out windows.   I
had [to] deal with that.   That's something I had to ameliorate
if I was going to try the case.

. . .

I was never going to call any of those people as a witness.
They had been charged and entered pleas.   They were
persons involved that could – I didn't want what they said
coming out or what their version of what happened is.   It put
in a different position.   I wanted all the prejudice and bias that
came from those persons that were saying he deliberately
drove at them in an accidental situation.   I don't want a
situation where I have a witness who's kicking a guy who's
dying in the head.   I certainly don't want to call him.   I don't
want a mother who's charged as an accessory after the fact.
I don't need her.   I don't need the kids who broke the windows
of the car, and I certainly don't need whatever his name is,
Fuentes, who's got a gun and a bat taking on three guys while
he's saying he's afraid of everything and he's saying he's
afraid.   I certainly wasn't going to call him under any
circumstances.

*Id.* at 62, 67.   Because Petitioner's family members had weapons, Counsel did not believe

that he could argue self-defense, and did not think "Stand Your Ground" was an option. *Id.*at

60, 69.   He believed he could argue that the death of the victim had been accidental, but

was worried that Petitioner left the scene after striking him with his vehicle. *Id.* at 45, 55,

64.   Counsel believed that if the victim's friends testified that Petitioner hit the victim with

his vehicle on purpose, there was a "very real possibility" that Petitioner would receive life

in prison. *Id.* at 56. The state prosecutor testified at the hearing that Counsel actually

discussed the defense of others and accident defenses with her when negotiating a plea.

*Id.* at 76.

Counsel had a "duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-

91.   Counsel's rejection of the defenses now urged by Petitioner were clearly based on

his consideration of the circumstances surrounding the events leading to the victim's death and his conclusion that it would be unwise to let the jury know about Petitioner's gang affiliation (even if attenuated) and the behavior of Petitioner's family members before and after the victim was struck.   Counsel's decision to limit defense witnesses was based on the same concerns and on the possibility that the jury could conclude that Petitioner had purposely hit the victim with his vehicle.   "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690.   Petitioner has failed to show how Counsel's performance was deficient.   Accordingly, the state court's rejection of Claims Three and Five was neither contrary to *Strickland*, nor based upon an unreasonable determination of the facts.

### C.    Claim Six

Petitioner asserts that the state "was in possession and knowledgeable of significant and material exculpatory evidence favorable to Defendant which the State failed to disclose to and knowingly withheld from the defense[.]" (Doc. 1 at 44). Specifically, Petitioner claims that the state knew of certain witnesses' gang affiliations; that one witness had drawn a diagram of the scene; and possessed updated contact information for missing witness Juan Lopez. *Id.* at 44-45.   Petitioner asserts that, had the state not withheld this evidence, Counsel would have investigated and discovered the applicability of the defenses of self-defense, defense of another, or accident. *Id.* at 45. As a result, Petitioner would not have entered a plea. *Id.*

Respondent urges that this claim is unexhausted because the post-conviction court failed to rule on it (Doc. 17 at 41).   It is unnecessary for this Court to examine whether a state court's failure to specifically address a claim that was raised in a Rule

3.850 motion renders the claim unexhausted because Petitioner's assertions lack merit. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, "a defendant must prove: (1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." *United States v. Schier*, 438 F.3d 1104, 1106 n. 1 (11th Cir. 2006) (citing *Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002)). "[N]either mere speculation that the prosecution might possess information helpful to the defense nor base assertions, without more, of the presence of exculpatory information in the prosecution's files would be sufficient to warrant a *Brady* determination." *Brown v. United States*, No. 3:02–cr–14, 2006 WL 1582421, at *2 (M.D. Ga. 2006) (quoting 25 James Wm. Moore et al., Moore's Federal Practice § 616.06[2] (3d ed.1997)).

At the Rule 3.850 evidentiary hearing, Petitioner testified that the incident resulting in the victim's death was associated with gang violence (EH at 15). Counsel also testified that he knew of the gang affiliations of those involved in the incident. *Id.* at 44-45, 49-50, 61-62. The state prosecutor testified that no special "gang folders" exist in Hendry

County and that she possessed no special information concerning the gang activity of the victim and his associates. *Id.* at 77-78.   "There is no *Brady* violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence." *Provenzano v. State*, 616 So. 2d 428, 430 (Fla. 1993).   "[A] *Brady* claim cannot stand if a defendant knew of the evidence allegedly withheld or had possession of it, simply because the evidence cannot then be found to have been withheld from the defendant." *Owen v. State*, 986 So. 2d 534, 547 (Fla. 2008).   In light of Petitioner's knowledge of the alleged gang affiliation of the victim and his friends, it could not have been "suppressed" by the state, and Petitioner has not demonstrated a *Brady* violation.

Likewise, Petitioner's assertion that witness Mario Trejo may have drawn a map during his police interview fails to satisfy the *Brady* test.   The state prosecutor testified that she was never provided any map from Trejo and that she had "no clue" what the alleged drawing contained (EH at 80).[6]   In order to set forth a *Brady* claim, a petitioner must show that the prosecutor actually possessed the *Brady* evidence before or during the petitioner's trial. *United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011). "Mere speculation that the evidence was in the government's possession is not enough." *United States v. Brown*, 598 F. App'x 689, 692 (11th Cir. 2015); *see also United States v. Jordan*, 316 F.3d 1215, 1253 n. 81 (11th Cir. 2003) ("[M]ere speculation or allegations that the prosecution possesses exculpatory information will not suffice to prove 'materiality' ").   Petitioner has not shown that the alleged Trejo drawing actually existed,

---

[6] The prosecutor admitted that Trejo's said "why don't we do a drawing," during his police interview, but she could not find, and Trejo's interviewer had no recollection of, any map or drawing (EH at 80).

and if it did, that the state withheld it from the defense. Accordingly, he has not demonstrated a *Brady* violation in regards to the alleged Trejo drawing.

Finally, the state prosecutor testified that she provided the defense team with the only address she had for Juan Lopez (EH at 81). Again, Petitioner's speculation that the state somehow came into possession of an updated address for Mr. Lopez, but failed to alert the defense, does not state a *Brady* claim.

In light of the foregoing, Petitioner is not entitled to relief based on *Brady*. Claim Six is denied pursuant to 28 U.S.C. § 2254(d). Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV. Certificate of Appealability[7]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing

---

[7] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     The Florida Attorney General is dismissed from this action.

2.     The 28 U.S.C. § 2254 petition filed by Wilfredo S. Sepulveda is **DENIED.**

3.     Petitioner is **DENIED** a certificate of appealability.

4.     The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 19th day of September, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Wilfredo S. Sepulveda
Counsel of Record